United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO MARTINEZ,<br>　　　　　Plaintiff,<br>　　v.<br>ROSS STORES, INC., et al.,<br>　　　　　Defendants. | Case No. 18-cv-04636-JD<br><br>**ORDER RE ARBITRATION**<br>Re: Dkt. No. 21 |

Pablo Martinez, suing on behalf of himself and a putative class, alleges that defendants Ross Stores, Inc. and DMSI Staffing, LLC violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), in conducting background checks on prospective employees. The action was originally filed in California Superior Court and removed on federal question subject matter. Defendants seek to compel arbitration of the claims on the basis of an arbitration agreement in an employment application. The case is ordered to arbitration.

**BACKGROUND**

The pertinent facts are straightforward. Martinez applied for a job with Ross through a staffing company, DMSI, in December 2017. Dkt. No. 4, Ex. 1 ¶ 16. ("Complaint"). After a background check, Martinez was advised that he would not get a job. *Id.* Martinez alleges that Ross and DMSI violated the FCRA and related California state law provisions by failing to make adequate disclosures in connection with the background checks and adverse actions on employment.

When Martinez applied for a job, he signed a "Dispute Resolution Agreement." Dkt. No. 22, Ex. B(1) (the "DRA"). Among other provisions, the DRA states that Martinez and DMSI "agree to resolve by arbitration any and all disputes arising out of or relating to DMSI's failure to

hire you, regardless of whether that dispute is between (1) just you and DMSI or you and any other associate, employee, agent, or representative of DMSI, or (2) you and any client of DMSI or any entity you claim is jointly responsible with DMSI for any hiring decision or decision to deny employment to you or to whom you would otherwise be dispatched for work and/or any employee, agent, or representative of such entity (all of whom are understood to be third-party beneficiaries of this Agreement and are entitled to enforce it), regardless of who initiates the claim regarding such dispute." *Id*. at p.1. The DRA waives arbitration "on a class, collective, representative, Private Attorney General Act ("PAGA") and/or group action basis." *Id*. ¶ 3.

The DRA defines the procedures for arbitration. The parties will mutually select a single arbitrator, the hearing will be held in the location where the individual last worked or applied for work with DMSI, the arbitration fees will be paid by the parties as apportioned by the arbitrator or paid entirely by DMSI if state law so requires, and attorney's fees may be awarded if authorized by state or federal law. *Id*. ¶ 2.

The DRA does not name a specific arbitration entity such as AAA or JAMS, and there is no delegation clause in the agreement. The DRA is expressly governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). *Id*. at p.1.

Martinez does not dispute that he signed and dated the DRA. *Id.* at p.2.

**LEGAL STANDARDS**

The FAA governs the motion to compel arbitration. The FAA's "overarching purpose . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The Court's role under the FAA is limited to determining (1) whether a valid and enforceable contract to arbitrate exists, and if so, (2) whether the scope of the agreement encompasses the claims in issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012 (9th Cir. 2004). If the party seeking to compel arbitration establishes both factors, the FAA requires the Court to enforce the arbitration agreement in accordance with its terms. *Id*. Any doubts about the scope of arbitrable issues should be resolved in favor of arbitration. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,* 925 F.2d 1136, 1139 (9th Cir. 1991). *See generally Jacobson v. Snap-on*

*Tools Co.*, No. 15-CV-02141-JD, 2015 WL 8293164, at *2 (N.D. Cal. Dec. 9, 2015).

The DRA does not contain a choice of law provision, but Martinez signed it in California in connection with an employment opportunity there, and the parties do not disagree that California law applies. *See* Dkt. No. 21 at 4-5; Dkt. No. 23 at 5. Consequently, Martinez's challenges to the validity and enforceability of the DRA are evaluated under California contract law. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *Alonso v. AuPairCare, Inc.*, No. 3:18-CV-00970-JD, 2018 WL 4027834, at *2 (N.D. Cal. Aug. 23, 2018). An arbitration agreement can be avoided on the same grounds available to avoid the enforcement of any contract, so long as the defense does not have a disproportionate effect on arbitration. *Thompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016); *Alonso*, 2018 WL 4027834, at *2.

Ross and DMSI bear the burden of establishing the existence of a valid arbitration agreement, and Martinez has the burden of showing that it is unenforceable or otherwise subject to a defense. *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017); *Snap-on Tools*, 2015 WL 8293164, at *2.

**DISCUSSION**

**I.      THE DRA IS A VALID CONTRACT**

Although DMSI has tendered a DRA that Martinez signed and dated, he challenges the agreement as illusory because it lacked adequate consideration and was not mutual in its obligations. Dkt. No. 23 at 5-6. The point is not well taken. The DRA expressly established a reciprocal agreement to arbitrate disputes arising out of or relating to Martinez's job application. California treats such mutual agreements as non-illusory and sufficient as consideration. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002); *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 1913832, at *3.

Martinez suggests that the terms of the DRA do not amount to a binding contract because his application was eventually turned down and he never got a job. Even assuming for discussion that this could be a cognizable validity challenge, it is unpersuasive. The DRA expressly covers "disputes arising out of or relating to DMSI's failure to hire you." Martinez offers no statutory or case law principle, or any other good reason, to set aside that plain agreement simply because he

3

1 did not get a job. To the contrary, California recognizes that "an employment application can contain an arbitration clause regarding disputes arising out of the application itself." *Balandran v. Labor Ready, Inc.*, 124 Cal. App. 4th 1522, 1530 (2004).

## II. THE DRA IS ENFORCEABLE

Martinez's suggestion that the DRA is unenforceable on unconscionability grounds is equally unavailing. California law provides that a contract provision is unenforceable if it was "unconscionable at the time it was made." Cal. Civil Code § 1670.5(a). The party asserting unconscionability bears the burden of proof. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015). "[P]rocedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243-44 (2016).

The unconscionability challenge fails across the board. There is no doubt that a modicum of procedural unconscionability is present because the DRA was a standardized agreement presented to prospective applicants with no opportunity for negotiation. But all such contracts have some degree of adhesion, and simply offering arbitration and other terms on a take-it-or-leave-it basis is not enough to find an agreement to arbitrate unenforceable. *Sanchez*, 61 Cal. 4th at 915. There is also no evidence of sharp practices, trickery or deception with respect to the DRA. It was presented to Martinez as a stand-alone document that described, in straightforward and accessible language, the arbitration agreement the parties mutually bound themselves to. Martinez may not have been "accustomed to seeing arbitration agreements as part of a job application," Dkt. No. 23 at 11, but that is not the kind of surprise or unfairness that makes an agreement unenforceable.

So too for Martinez's claims of substantive unconscionability. Because only de minimis procedural unconscionability attaches to the DRA, Martinez needs to identify evidence of "overly harsh" or "one-sided" terms in the arbitration clause to prevent enforcement. *See Sanchez*, 61 Cal.

4

1  4th at 910. This he has not done. The terms of the arbitration agreement are reciprocal and
2  mutual in all respect. The only exceptions weigh in Martinez's favor, such as holding the hearing
3  in the locale where he applied and obligating DMSI to pay all arbitration fees if required by state
4  law. He has not shown that anything in the DRA is unreasonably favorable to defendants or has
5  stacked the deck against him. *See Alonso*, 2018 WL 4027834, at *4.

Martinez's mention of the waiver with respect to PAGA claims is of no moment. To be sure, the DRA's waiver of representative claims under PAGA is not sustainable under California state law. *See Iskanian v. CLS Transp. L.A., LLC,* 59 Cal. 4th 348, 388-89 (2014). The FAA does not preempt that rule. *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 427 (9th Cir. 2015). But Martinez does not state a PAGA claim in the complaint. Dkt. No. 4, Ex.1. And even if the PAGA provision were germane to Martinez's case, it would not render the entire DRA unenforceable, as he suggests. *Mohamed v. Uber*, 848 F.3d 1201, 1214 (9th Cir. 2016). The PAGA provision is severable, *see id*. and DRA at Dkt. No. 22, Ex. B(1), and the appropriate measure would have been to do just that, if PAGA were raised in his complaint, and leave the rest of the DRA intact. The DRA's remaining waiver of class or collective arbitration is valid. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).

### III. THE DRA COVERS THE FCRA AND RELATED STATE LAW CLAIMS

Martinez appears to suggest that the claims in the complaint are somehow outside the scope of the arbitration agreement. He again cites no authority for this position. As noted, the plain language of the agreement to arbitrate applies to any and all disputes relating to Martinez's job application, without exclusion of the FCRA or state law analogs, or any other potential legal claim. There is nothing in the FCRA that makes it inherently exempt from arbitration. *See Hernandez v. San Gabriel Temp. Staffing Servs., LLC*, No. 17-CV-05847-LHK, 2018 WL 1582914, at *4-5 (N.D. Cal. Apr. 2, 2018); *Alvarado v. Lowe's Home Ctrs., LLC*, No. 18-CV-03591-HSG, 2018 WL 6697181, at *3 (N.D. Cal. Dec. 20, 2018).

### IV. ROSS MAY SEEK ARBITRATION

Martinez suggests that even if the DRA is valid and enforceable, the claims against Ross cannot be arbitrated. This too is unpersuasive. Martinez himself treats DMSI and Ross as

effectively a single entity.  Throughout the complaint, he lumps Ross and DMSI together without ever distinguishing them in any substantive way.  *See, e.g.*, Dkt. No. 4, Ex. 1 at ¶¶ 1-2, 16, 21-24, 31.  In addition, the DRA expressly contemplates that the arbitration agreement extends to Ross as a party alleged to be jointly responsible with DMSI for hiring or denying employment, among other grounds.  DRA at Dkt. No. 22, Ex. B(1).  That is enough to establish Ross's right to join in compelling arbitration.  *See Bozzio v. EMI Grp. Ltd.*, 811 F.3d 1144, 1152 (9th Cir. 2016); *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010).

## CONCLUSION

The motion to compel arbitration is granted.  The case will be administratively closed until further order.  The parties should file a joint report at the conclusion of the arbitration, or a settlement or other development that terminates Martinez's claims.

**IT IS SO ORDERED.**

Dated:  September 5, 2019

JAMES DONATO
United States District Judge